UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-20804-SINGHAL

UNITED STATES OF AMERICA

vs.

WILLIAM D. FOSTER,
          a/k/a "William Cortes,"
          a/k/a "William Cortez,"
          a/k/a "Frank Herman Cruz"
          a/k/a "Frank Cruz,"
ASHLEIGH HOLLOWAY, and
HANAH CHAN,

          Defendant.
_____/

THE UNITED STATES OF AMERICA'S NOTICE OF INTENT
TO INTRODUCE EXPERT TESTIMONY

The United States hereby provides notice of its intent to introduce expert testimony from Special Agent James E. Hardie with the Federal Bureau of Investigation ("FBI"), who has extensive experience in the investigation of sex trafficking, in order to assist the jury in understanding the evidence in this case.  *See United States v. Lewis,* 762 Fed. App'x 786, 797 (11th Cir. 2019) (citing *United States v. Taylor,* 239 F.3d 994, 998 (9th Cir. 2001) ("[T]he relationship between prostitutes and pimps is not the subject of common knowledge . . . . A trier of fact who is in the dark about that relationship may be unprepared to assess the veracity of an alleged pimp, prostitute, or other witness testifying about prostitution.")).

The United States expects that Special Agent Hardie will be qualified to testify as an expert on common dynamics that occur in the operation of sex trafficking, including: (1) terminology commonly used in the sex trafficking subculture and common dynamics in sex trafficking organizations; (2) the typical means sex traffickers use to target and recruit victims; (3)

1

contributing factors that can make victims more susceptible to influence by sex traffickers; (4) common ways sex traffickers use force, fraud, and coercion to maintain control over victims' actions; and (5) common dynamics between sex traffickers and their victims, discussed in more detail *infra*.

James Hardie is a Supervisory Special Agent with the FBI.  Special Agent is a certified profiler with the FBI's Behavioral Analysis Unit ("BAU").  Special Agent Hardie has investigated sex trafficking offenses involving both minor and adult victims since 2008.  From 2008 to 2013, he served as the coordinator of the FBI's Violent Crimes Against Children Task Force in Toledo, Ohio.  From 2013 to 2015, he served at the FBI's representative to the National Center for Missing and Exploited Children, and he coordinated sex trafficking reporting between the National Center and the FBI's 71 child exploitation task forces.  From 2015 to 2017, Special Agent Hardie returned to the Toledo office and continued to supervise sex trafficking investigations.  Special Agent Hardie has participated in numerous national sex trafficking stings in other jurisdictions, including events such as the Super Bowl.  Over the course of his career, Special Agent Hardie has interviewed hundreds of individuals involved in prostitution to include numerous child and adult victims of sex trafficking, as well as approximately two dozen traffickers and individuals at high levels within sex trafficking organizations.

Additionally, Special Agent Hardie has participated in various trainings regarding dynamics in sex trafficking operations.  He attends trainings regarding sex trafficking on at least a yearly basis, and he often attends numerous trainings in a year.  He has received specialized training in interviewing minor victims of sex trafficking, and the techniques learned in those trainings apply to interviewing adult sex trafficking victims.  Special Agent Hardie has also given numerous trainings regarding sex trafficking, including the Advanced Sex Trafficking

Investigations course for the Ohio Peace Officer's Training Academy.  Special Agent Hardie has provided trainings and presentations regarding sex trafficking at the request of the Department of Justice, and he has testified before the Ohio House of Representatives Judiciary and Ethics Committee regarding sex trafficking matters.  Special Agent Hardie has previously been qualified in Federal court, including in the Southern District of Florida, to testify as an expert in sex trafficking.  *See* curriculum vitae for case information, attached hereto as Exhibit 1.

## SUMMARY OF TESTIMONY

Based on his training and experience, the Government anticipates that Special Agent Hardie will testify about the typical means sex traffickers use to target, recruit, entice, harbor, transport, provide for, manipulate, obtain and maintain victims.  Special Agent Hardie will testify that there are different types of traffickers who use different methods to recruit and maintain women for sex trafficking.  Special Agent Hardie will explain that, in the beginning, traffickers commonly provide housing, food, affection and attention to make the victims feel loved—a process referred to as "grooming." Special Agent Hardie will testify that the relationship often begins like a boyfriend/girlfriend dynamic between the victim and the pimp. Special Agent Hardie will explain that pimps often promise that, by engaging in acts of prostitution, the victim will be able to obtain what they want in life, including acquiring wealth. Special Agent Hardie will also describe how traffickers use victims to recruit and maintain other victims.

Based on his training and experience, the Government anticipates that Special Agent Hardie will testify about the types of victims who are commonly recruited by pimps to participate in acts of prostitution. In general, Special Agent Hardie will testify that pimps prey on vulnerable victims, and they attempt to ascertain whatever the victim desires in order to exploit that desire. For example, a pimp will target young women who have very low self-esteem, lack familial

support, or otherwise feel unloved and unwanted, are in need of money or housing (or both), are addicted to, or frequently use, drugs or alcohol, and/or suffer from mental illness.

Based on his training and experience, the Government anticipates that Special Agent Hardie will testify about the common ways that sex traffickers use force, fraud, and coercion to maintain control over victims' actions and to prevent victims from leaving the relationship. Special Agent Hardie will describe intimate partner violence as a means of control commonly used by traffickers. Intimate partner violence includes physical force (e.g. beating, slapping, punching, strangling), sexual assault, psychological violence, social isolation, stalking, threats, and intimidation.  Special Agent Hardie will explain the concept of the "compliant victim" who may not leave a trafficking relationship even when the opportunity seemingly presents itself.

Based on his training and experience, the Government anticipates that Special Agent Hardie will testify about other methods, or combination of methods, commonly employed by a pimp to control the women who work for him. Special Agent Hardie will explain that a "finesse pimp" is a pimp who rules with his words and uses verbal manipulation to cause their victims to engage in acts of prostitution under their direction. Special Agent Hardie will testify regarding other methods that traffickers often use to control their victims, including, controlling the money earned by the victim from prostitution and preying on a victim's insecurities or vulnerabilities.

Based on his training and experience, the Government anticipates that Special Agent Hardie will testify about the common reactions of victims of sex trafficking to the abuse.  Many victims continue to express love and loyalty toward their pimp even after removed from the situation.  Most minimize the number or extent of prostitution acts in which they engaged due to feelings of shame and embarrassment.  Others express fear of their pimp, but typically that occurs only after the victim has been removed from the pimp's custody or care and feels safe from his

grasp.   And some victims express concern about being prosecuted themselves due to their participation in illegal conduct.   For any of these reasons, victims of sex trafficking may not be completely forthcoming when questioned by law enforcement during the early stages of an investigation.

Based on his training and experience, the Government anticipates that Special Agent Hardie will testify that it is common that victims of sex trafficking do not feel free to go, and that victims often leave the trafficker only to return. Special Agent Hardie will testify that once a victim is groomed and engaging in acts of prostitution for the pimp, often she feels that she is dependent on the trafficker. Special Agent Hardie will explain that it is common that sex traffickers instill in their victims a sense of fear that the trafficker will find the victim or her family if she tries to run away.   Special Agent Hardie will also testify regarding the term "automatic," which applies to victims who appear to have freedom but in reality they are conditioned to automatically return to their trafficker and given him the proceeds of any prostitution.   Special Agent Hardie will testify that in his experience, the victims feel a sense of loyalty to their pimps and they are often fearful of the consequences for failing to return. Special Agent Hardie will explain that when a victim is able to run away from her trafficker, she often leaves without any money or material belongings.

Based on his training and experience, the Government anticipates that Special Agent Hardie will testify about the subculture of sex trafficking and certain terms and the meaning of those terms that are used by those who engage in prostitution or who solicit sexual acts in exchange for money.   For example, Special Agent Hardie will also testify that a "stable" is a word commonly used to refer to a group of women who work for the same pimp.  A "bottom" tends to be the pimp's most trusted and loyal prostitute who is often used to groom other victims, help facilitate the prostitution of other females in the stable, and, in some cases, to dole out punishment.  A "john,"

a "date," and a "mark" are some common terms used to refer to clients.  Special Agent Hardie will define other terms that often come up in sex trafficking operations.

Based on his training and experience, the Government anticipates that Special Agent Hardie will testify about the logistics of a sex trafficking operation. Special Agent Hardie will explain the roles of different persons in a sex trafficking ring, including the role of bottoms, drivers, security, or persons who monitor the victims' movements.  Special Agent Hardie will also testify regarding opinions he has formed based on his training and experience interviewing pimps regarding how pimps learn the sex trafficking trade, how they evolve, and common techniques used by pimps when interacting with law enforcement officers.  The Government anticipates that Special Agent Hardie will also testify regarding rules commonly imposed upon victims by their traffickers, including that victims provide all, or nearly all, of the proceeds of the trafficking to the trafficker.

Based on his training and experience, the Government anticipates that Special Agent Hardie will also testify regarding why victims, particularly victims of sexual abuse and minor victims of abuse, often refuse to disclose their abuse or wait long periods of time before disclosing their abuse; disclose over time and piecemeal, and may later attempt to deny or recant previous allegations of sexual and physical abuse and exploitation.  Special Agent Hardie will also testify about the reasons why victims choose to disclose their abuse, including various types of triggering events and/or life changes a victim may encounter, which may affect their willingness to disclose the abuse.

Special Agent Hardie will not testify about the credibility of the victim or witnesses. In fact, Special Agent Hardie has never met the victims, nor has he viewed any statements of the victims. Special Agent Hardie will not interview the victims before trial. Special Agent Hardie

6

will testify as to sex trafficking victims in general terms, not the behavior exhibited by the victims in this case. Special Agent Hardie may also be called upon to answer hypothetical questions regarding the above-described subjects based upon evidence already presented at trial.

**SPECIAL AGENT HARDIE'S EXPERT TESTIMONY MEETS THE REQUIREMENTS FOR ADMISSIBILITY UNDER RULE 702 AND EXPERT TESTIMONY REGARDING THE PIMP-PROSTITUTE DYNAMIC HAS BEEN ADMITTED BY OTHER FEDERAL COURTS, INCLUDING THE SOUTHERN DISTRICT OF FLORIDA**

Rule 702 makes clear that experience in a field may provide a basis for expert testimony. *See United States v. Frazier*, 387 F.3d 1244, 1260-61 (11th Cir. 2004).  *See* Fed. Rule Evid. Rule 702 (expert status may be based on "knowledge, skill, *experience*, training, or education").  Courts in this district have permitted expert testimony about the pimp-prostitute dynamic under Rule 702. *See, e.g., United States v. Lundi*, 19-CR-20075-SCOLA (admitting the expert testimony of Special Agent Hardie, without a *Daubert* hearing, to testify on the pimp-prostitute relationship); *United States v. Gatlin,* Case No. 19-CR-20163-SMITH (admitting expert testimony from an FBI Special Agent regarding the pimp-prostitute relationship without a *Daubert* hearing); *United States v. Williams*, Case No. 18-CR-80053-ROSENBERG (admitting expert testimony from Special Agent Hardie regarding the pimp-prostitute relationship); *United States v. Lewis*, 762 Fed. App'x 786 (11th Cir. 2019) (Case No. 14-CR-60080-MARTINEZ) (admitting expert testimony by a doctor on the psychology of trauma to assist the jury in understanding the psychological and emotional relationships that prostitutes form with pimps, among other things); *United States v. Robinson, et al.*, Case No. 13-CR-60284-COHN (admitting expert testimony by FBI Special Agent about the dynamics between a pimp and his victims, specifically in the area of sex trafficking of children); *United States v. Collins*, Case No. 10-CR-20089-COOKE (admitting expert testimony of FBI Special Agent, following a *Daubert* hearing, regarding the pimp/prostitute relationship, the business of prostitution, the mode of operation, and the terminology used).

Furthermore, other Circuits have consistently admitted the testimony contemplated in this case. *See, e.g., United States v. Taylor*, 239 F.3d 994, 997-998 (9th Cir. 2001) (district court did not abuse its discretion in admitting the testimony of an academic expert on the relationship between prostitutes and their pimps); *United States v. Anderson, III,* 560 F.3d 275, 281-82 (5th Cir. 2009) (district court did not abuse its discretion in admitting expert testimony because the expert was qualified to testify regarding the typical characteristics of adolescent prostitutes and the behavior of pimps based upon his experience, which included being the director of a center that provided services for runaways and high-risk adolescent victims and that specialized in serving victims of sexual exploitation); *United States v. Brinson*, 772 F.3d 1314, 1319-20 (10th Cir. 2014) (district court did not abuse its discretion by deeming a detective qualified as an expert and allowing him to testify about the prostitution trade including: the meaning of certain terms commonly used in the prostitute trade, the relationship between pimps and prostitutes, how pimps and prostitutes use cellphones, how pimps and prostitutes use the internet, how pimps recruit prostitutes, and how pimps controls prostitutes); *United States v. Szczerba*, 897 F.3d 929, 939-40 (8th Cir. 2018), *cert denied*, 139 S. Ct. 1544 (2019) (the district court did not abuse its discretion in admitting expert testimony by a detective on sex trafficking); *United States v. Geddes*, 844 F.3d 983, 991 (8th Cir. 2017) (district court did not abuse its discretion in admitting agent's expert testimony on prostitution, relying on Eighth Circuit's earlier ruling in *United States v. Evans*, 272 F.3d 1069, 1094 (8th Cir. 2001), where the Eighth Circuit held that "the district court did not abuse its discretion in allowing expert testimony regarding the operation of a prostitution ring, including recruitment of prostitutes and the relationship between pimps and prostitutes, and regarding jargon used in such rings.").

## REQUEST FOR NOTICE REGARDING DEFENSE EXPERTS

This disclosure of an expert witness also serves as the United States' request for notice of expert testimony by the Defendants, pursuant to Federal Rules of Criminal Procedure 16. Specifically, the Government requests that the Defendants disclose to the Government a written summary of testimony that the Defendants intends to present at trial pursuant to Federal Rules of Evidence 702, 703, and 705.

                                             Respectfully submitted,

                                             ARIANA FAJARO ORSHAN
                                             UNITED STATES ATTORNEY

By:    */s/ J. Mackenzie Duane*
                  J. MACKENZIE DUANE
                  Assistant United States Attorney
                  Court No. A5502175
                  99 N.E. 4th Street
                  Miami, Florida 33132-2111
                  Telephone: 305-961-9341
                  Facsimile: 305-536-4699
                  Email: mackenzie.duane@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk

of the Court using CM/ECF, on January 21, 2020.

/s/ <u>*J. Mackenzie Duane*</u>
J. Mackenzie Duane
Assistant United States Attorney

10