**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-CR-20804-SINGHAL(s)**

**UNITED STATES OF AMERICA**

**vs.**

**WILLIAM D. FOSTER,**

       **Defendant.**

_____/

## THE UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

The United States, by and through the undersigned Assistant United States Attorney, hereby files this Sentencing Memorandum (1) notifying the Court of the United States' unopposed restitution request of $14,157,200; (2) responding to the Defendant's Objections to the Presentence Investigation Report ("PSR"); and (3) requesting that the Court sentence the Defendant to the guideline sentence of **life** in prison.

**I.      Introduction and Background**

On March 25, 2022, the Defendant pled guilty to a 14-count Superseding Indictment. Count 1 charges the Defendant with conspiring to commit sex trafficking, in violation of Title 18, United States Code, Section 1594(c). Count 2 charges the Defendant with sex trafficking of a minor, that is, Victim 4, in violation of Title 18, United States Code, Section 1591. Count 3 charges the Defendant with sex trafficking of a minor by force, fraud, and coercion, that is, Victim 1, in violation of Title 18, United States Code, Section 1591. Count 4 charges the Defendant with sex trafficking by force, fraud, and coercion, that is, Victim 1, in violation of Title 18, United States Code, Section 1591. Count 5 charges the Defendant with sex trafficking by force, fraud, and coercion, that is, Victim 2, in violation of Title 18, United States Code, Section 1591. Count 6 charges the Defendant with sex trafficking by force, fraud, and coercion, that is, Victim 5, in violation of Title 18, United States

Code, Section 1591. Count 7 charges the Defendant with sex trafficking by force, fraud, and coercion, that is, Victim 6, in violation of Title 18, United States Code, Section 1591. Count 8 charges the Defendant with sex trafficking by force, fraud, or coercion, that is, Victim 7, in violation of Title 18, United States Code, Section 1591. Count 9 charges the Defendant with sex trafficking by fraud and coercion, that is, Victim 8, in violation of Title 18, United States Code, Section 1591. Count 10 charges the Defendant with sex trafficking by fraud and coercion, that is, Victim 3, in violation of Title 18, United States Code, Section 1591. Count 11 charges the Defendant with conspiracy to transport individuals for purposes of prostitution, in violation of Title 18, United States Code, Section 371. Counts 12 and 13 charge the Defendant with transportation of individuals for prostitution, that is, Victims 3 and 6, in violation of Title 18, United States Code, Section 2421. Count 14 charges the Defendant with a money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h). Sentencing is scheduled for September 26, 2022.

In advance of sentencing, the United States has provided 15 written victim impact statements and anticipates that approximately 14 additional victims will be present in court to provide oral victim impact statements. These 29 women do not represent all of the Defendant's victims, just the victims who wished to participate in the sentencing. At time the of sentencing, the United States will request that the Court order the Defendant to pay $14,157,200 in restitution to the victims. Counsel for the Defendant, David A. Howard, has advised undersigned counsel that the Defendant does not oppose the United States' restitution request.

The Defendant has objected to the inclusion of the criminal history contained within paragraphs 164, 165, 169, 170, 171, 172, and 175 of the PSI. For reasons stated below, the United States has no objection to the Court striking all but paragraphs 171 and 175 from the Defendant's criminal history, which would reduce the Defendant's criminal history category to III. Even with the

reduction, the Defendant's recommended guideline sentence remains at life. A downward variance is not warranted in this case and the United States is requesting that the Defendant be sentenced to life in prison.

**II.     Unopposed Restitution Request**

The United States requests that, at the time of sentencing, the Court order the Defendant to pay restitution to the victims in the total amount of $14,157,200.  The Defendant does not oppose the United States' request. Restitution in this case is required under 18 U.S.C. § 1593, which provides that the Defendant shall be directed to pay the victims "the full amount of the victim[s'] losses." *See* 18 U.S.C. § 1593(b)(1).  The term "full amount of the victim's losses" includes the greater of the gross income or value to the Defendant of the victim's services or labor and any other relevant losses incurred by the victims, without any offset for the victims' living expenses.  18 U.S.C. §§ 1593(3), 2259(c)(2); *United States v. Williams,* 5 F.4th 1295, 1306 (11th Cir. 2021) (holding that the defendant was not entitled to offset restitution by the amount the defendant expended on his victims' living expenses). The requested restitution amount is based on the victims' average dollar amount earned per night from engaging in commercial sex multiplied by the six nights a week that the victims worked and then multiplied by the approximate number of weeks that the victims engaged in commercial sex at the Defendant's direction. *See United States v. Baldwin,* 774 F.3d 711, 728 (11th Cir. 2014) (citations omitted); *United States v. Furtrell,* 209 F.3d 1286 (11th Cir. 2000) (affirming restitution award and finding that a court may accept estimates and may reasonably approximate actual damages to a victim).

The United States will provide the Probation Office with a victim list, the victims' contact information, and the amount of restitution that each victim is owed (the "Victim List").  The

Probation Office will provide the Victim List to the Court by separate memorandum to preserve the confidentiality of the victims' identity and personal information.

According to the PSI in this case, the Defendant does not appear to have assets available to pay the entire amount of restitution at this time.  The United States therefore recommends that the Judgment of Conviction include the following standard language used in this district:

> It is further ordered that the defendant shall pay restitution in the amount of $100,000.  During the period of incarceration, payment shall be made as follows: (1) if the defendant earns wages in a Federal Prison Industries (UNICOR) job, then the defendant must pay 25% of wages earned toward the financial obligations imposed by this Judgment in a Criminal Case; (2) if the defendant does not work in a UNICOR job, then the defendant must pay a minimum of $25.00 per quarter toward the financial obligations imposed in this order.

> Upon release from incarceration, the defendant shall pay restitution at the rate of 10% of monthly gross earnings, until such time as the Court may alter that payment schedule in the interests of justice.  The U.S. Bureau of Prisons, U.S. Probation Office and U.S. Attorney's Office shall monitor the payment of restitution and report to the Court any material change in the defendant's ability to pay.  These payments do not preclude the government from using any other anticipated or unexpected financial gains, assets or income of the defendant to satisfy the restitution obligations.  The restitution shall be made payable to Clerk, United States Courts, and forwarded to:

> U.S. CLERK'S OFFICE
> ATTN: FINANCIAL SECTION
> 400 N MIAMI AVENUE, ROOM 8N09
> MIAMI, FL 33128

> The restitution will be forwarded by the Clerk of the Court to the victims on the attached list.

**III.     Response to the Defendant's PSI Objections**

On September 22, 2022, the Defendant filed objections to paragraphs 164, 165, 169, 170, 171, 172, and 175 of the PSI "on the ground that those incidents concern arrests of his brother Anthony Raines" (DE 222). The United States has no objection to striking paragraphs 164, 165, 169, 170, and 172 from the Defendant's PSI. The United States cannot definitively prove that the criminal

cases contained within those paragraphs was committed by the Defendant. However, as to paragraphs 171 and 175, the Defendant's objections should be overruled.

As for paragraph 171, the PSI states that the Defendant was arrested after a traffic stop on August 15, 2014. The booking photo for the Defendant's arrest on that date shows that it was in fact the Defendant who was arrested and booked on that date (Exhibit 1, separately filed under seal). As such, the Defendant's objection to paragraph 171 should be overruled.

As for paragraph 175, Defendant's arrest is related to his sex trafficking activities more than 25 years ago when he lived in West Orange, New Jersey. The United States previously filed a motion under Federal Rule of Evidence 404(b) (DE 169) to admit the testimony of Victim A, who is the first minor listed in the attached complaint related to the paragraph 175 incident (Exhibit 2, separately filed under seal). Victim A's FBI interview report is separately filed under seal as Exhibit 3. As such, the Defendant's objection to paragraph 175 should be overruled.

## IV.    Support for a Life Sentence

### A.    Applicable Law

In determining the appropriate sentence, the Court must consider the factors set forth in Title 18, United States Code, Section 3553(a). *United States v. Williams,* 557 F.3d 1254, 1256 (11th Cir.2009) (quotation marks omitted). These factors include the nature and circumstances of the offense and the history and characteristics of the defendant; the Sentencing Guidelines range; and the need to avoid unwarranted disparities among similarly situated defendants. Ultimately, the Court must impose a sentence sufficient, though not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, adequately punish the crimes committed, deter other criminal conduct, protect the public from the defendant, and provide for any particularized needs of the defendant. 18 U.S.C. § 3553(a)(2).

Courts should impose sentences that take a holistic view of a defendant's characteristics and conduct, as well as the impact of that conduct on the community. In doing so, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information he may consider, or the source from which it may come." *United States v. Jones*, 635 F.3d 909, 917 (7th Cir. 2011) (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)). This principle is echoed in 18 U.S.C. § 3661, which states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *See also* 18 U.S.C. § 3553(a)(1) (directing consideration of the "history and characteristics of the defendant"). "The facts that a sentencing judge finds in determining what sentence to impose—such facts as the defendant's criminal history, his cooperation or lack thereof in the government's investigation, and his remorse or lack thereof—need be found only by a preponderance of the evidence." *United States v. Horne*, 474 F.3d 1004, 1006 (7th Cir. 2007).

**B.    Argument**

Over the past 20-plus years, the Defendant psychologically, emotionally, financially, physically, and sexually exploited a multitude of females, both minors and adults, for his financial benefit. Controlling as many as 15 girls at a time, the Defendant caused the victims to sell their bodies so that he could live a lavish lifestyle. Not only has the Defendant managed to live large off the proceeds of his exploitation, but he has consistently avoided accountability for his crimes by maintaining near-total control over his victims, all while causing them irreparable harm. The Defendant's extensive abuse and exploitation of some of the victims in this case is detailed in both the PSI, the many victim impact letters previously provided to the Court, and the oral victim impact statements that will be provided to the Court at sentencing. The considerable volume and egregious

nature of the Defendant's conduct means that his total offense level under the United States Sentencing Guidelines is off the charts; he scores a 49 out of a possible 43. Even at six points above the highest offense level set by Congress, the Defendant's offense level is still understated as it does not take into consideration the vast majority of the women he victimized.[1] Similarly, because the Defendant was so skilled at manipulating his victims, he has repeatedly avoided prosecution for his crimes, including sex trafficking, aggravated battery, and sexual activity with minors. As a result, even though the Defendant has a criminal history category of III, his true criminal history is even more significant.

Although life in prison is an exceptional sentence, this is a case in which it is warranted. Considered by almost any metric, the Defendant's conduct could scarcely have been more serious, more prolonged, more lucrative, or more damaging. To provide appropriate deterrence for this type of crime, and adequate punishment for the Defendant, the United States respectfully requests that the Court impose a life sentence.

### i.      The nature and circumstances of the offense

Unlike more finite offenses such as robbery or arson, which could conceivably occur as an isolated mistake or in the "heat of the moment," human trafficking is a deliberate and calculated offense that takes place over a period of time. That period can sometimes be very short. For example, a defendant who uses false promises or threats to coerce an adult victim into a single commercial sex act could be charged with a violation of Title 18, United States Code, Section 1591, facing a 15-year minimum mandatory and statutory maximum of life in prison.

The Defendant, on the other hand, made a long and lucrative career of trafficking women and

---

[1] The combined offense level for a sex trafficking case involving multiple victims is capped at a five-level increase, no matter how many victims there were. *See U.S.S.G.* §§ 2G1.1(d), 3D1.4.

girls by means of deceit, manipulation, sexual abuse, and physical force. The conduct charged in the Superseding Indictment began in 2004 but the Defendant had engaged in sex trafficking much earlier than that, as early as 1996. The Defendant's sex trafficking operation continued virtually uninterrupted until late 2019 when he was arrested in this case. His crimes were not one-time lapses in judgment. Nor were they crimes of convenience, or even desperation. Instead, for the Defendant, exploiting females was a way of life. The Defendant treated the victims as property, without regard for their safety and well-being. To the Defendant, the victims were simply products for sale to generate income. He required them to look a certain way, skinny and blonde, many of the victims going on dangerous starvation diets to lose weight and getting weight loss surgeries overseas despite not being overweight. Many of the victims continue to have medical complications to this day. The Defendant convinced many of the victims that they were bipolar or depressed, and put them on anti-anxiety and anti-psychotic medications, so that they would be easier to control and numb to the fact that they were having sex with countless, random men on a daily basis. The Defendant perverted the victims' sense of a normal, loving relationship, requiring them to have sex with him at his choosing, bringing many of the victims to swingers' clubs to desensitize them from having sex with strangers, and withholding attention and affection if the victims didn't earn enough or comply with his demands. The Defendant controlled every aspect of the victims' lives. They were earning thousands of dollars engaging in commercial sex but had to ask permission from the Defendant to buy hygiene products or food. One victim reported hiding a hygiene product under her mattress so that the other girls wouldn't take it since they weren't allowed to spend money. Another victim reported eating out of a dumpster because she was too scared to ask the Defendant to buy food. The facts of this case read like a demented movie too twisted to be real, but unfortunately it was the reality for so many women. The effects of having to endure that reality are lifelong and far-reaching. The Defendant's actions

have not only impacted the victims but their loved ones and will continue to do so.

This kind of long ranging, despicable conduct warrants an equally long ranging and significant sentence that will protect the public from the Defendant for the rest of his life.

### ii.     The history and characteristics of the Defendant

The PSI provides an overview of the Defendant's criminal history, going back to 1994. As laid out in the paragraph 175 prior above, the Defendant has been sex trafficking both minors and adults since at least as early as 1996. The only employment that he reported relates to businesses that were funded by the victims' commercial sex proceeds. The Defendant has built a life around profiting off the exploits of his victims. The Defendant reports some childhood physical abuse, such abuse does not explain or mitigate his crimes.

### iii.    The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

The seriousness of the Defendant's conduct is difficult to overstate. The Defendant took advantage of numerous women and girls in difficult life circumstances and used them for his own profit. The Defendant targeted girls who were runaways, homeless, drug addicts, trafficking victims, lacking in familial support, and promised that he was going to improve their lives. The Defendant manipulated his way into their lives and then left them in far worse circumstances than those in which he found them. Indeed, most of these women came to the Defendant with very little, they left with even less than when they arrived. Worse still than the economic impact of the Defendant's crimes are the effects on the victims' physical and psychological health. In short, the Defendant's impact on his victims has been catastrophic. Considering the degree of harm he inflicted, and the number of victims he inflicted it upon, a life sentence is necessary to properly reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

      **iv.**    **The need for the sentence imposed to afford adequate deterrence to criminal conduct**

Crimes that are the most lucrative compared to their relative risk of detection are some of the most attractive to would-be criminals. The International Labour Organization has estimated that commercial sexual exploitation generates approximately $99 billion dollars in global profits each year. *ILO says forced labour generates profits of US$ 150 billion*, May 20, 2014, https://www.ilo.org/global/about-the- ilo/newsroom/news/WCMS_243201/lang--en/index.htm. The crime of sex trafficking can deliver a high return on investment, as illustrated in this case, as compared with other types of criminal enterprises. The Defendant's "products" were human beings, who do not automatically attract the attention of law enforcement like many types of contraband would. The Defendant paid nothing to obtain his victims, so any money they made was practically pure profit to him. He fed and clothed them just enough to ensure that they were useable as commodities. Although the victims bore the risk of arrest for the crimes he directed them to commit, the Defendant sat comfortably behind the scenes—often playing video games in the comfort of his home—waiting to reap the rewards of their efforts. He made sure his victims were in no position to demand or keep any of the money they earned, meeting any such challenge to his power with emotional, psychological, and physical consequences. A crime this insidious requires a sentence that will provide not only specific deterrence to the Defendant, but general deterrence to others. A life sentence here would send the appropriate message to current and prospective sex traffickers in this district that this conduct will not be tolerated.

      **v.**    **The need for the sentence imposed to protect the public from further crimes of the defendant**

The Court should impose a sentence that incapacitates the Defendant for the maximum possible period. Based on the length of time that the Defendant has engaged in sex trafficking and

his deranged regard for the legal and social norms, it is nearly impossible to believe that he would change his worldview. Somebody so untethered to the law and societal norms cannot be trusted in the community. Based on the facts and circumstances in this case, the primary objective in sentencing should be to protect the community for the longest period of time possible.

### vi.    Avoiding unwarranted sentencing disparities

The avoidance of unwarranted disparities is part of the reason Congress established the sentencing guidelines. *United States v. Gall*, 552 U.S. 38, 54 (2007); *see also United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009) ("Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similar." In this case, the Defendant's guidelines recommend a sentence of life in prison. Although the Court of Appeals doesn't automatically presume that a sentence within the sentencing guidelines range is reasonable, it ordinarily expects such a sentence to be reasonable. *See United States v. Perkins*, 787 F.3d 1329, 1342 (11th Cir. 2015) (citation omitted). The imposition of a life sentence is and should be a rare and significant event. Nevertheless, courts around the country have agreed, in cases similar to this one, that a life sentence is warranted under such circumstances. Some examples, with Eleventh Circuit cases listed first, have been provided below:[2]

- *United States v. Gatlin*, 19-CR-20063 (S.D. Fla. December 2, 2019) (defendant sentenced to life after trial for sex trafficking a single 17-year-old minor female without force, fraud, or coercion; the defendant had a total offense level of 43 and criminal history category of IV).

- *United States v. Williams*, Case No. 9:18-CR-80053-001 (S.D. Fla. May 1, 2019) (five consecutive life sentences imposed following convictions at trial for offenses related to the 42-year-old defendant's trafficking of three women and girls using force, fraud, and coercion during a period of approximately ten years; the defendant had a total offense level of 40 and criminal history category of I), *aff'd*, 5 F.4th 1295, 1308 (11th

---

[2] The examples provided here are by no means an exhaustive list of life sentences imposed in sex trafficking cases. There are many more examples, some from districts already represented herein, and some from other districts in the same or other circuits.

Cir. 2021).

- *United States v. McKinley*, Case No. 0:14-CR-60163 (S.D. Fla. December 14, 2014) (defendant was sentenced to life after being convicted after trial of sex trafficking by force, fraud, and coercion and one count of kidnapping, involving one victim; the defendant had a total offense level of 40 and criminal history category of VI).

  - *United States v. Grant*, Case No. 4:15-CR-24 (S.D. Ga. Nov. 20, 2015) (defendant sentenced to life in prison after pleading guilty to one count of sex trafficking conspiracy, where the defendant prostituted vulnerable women and minors using threats against the victims' families and manipulation of substance abuse disorders), *aff'd* 667 Fed. App'x 762 (11th Cir. 2016).

  - *United States v. Mustafa*, Case No. 1:11-CR-234 (N.D. Ga. Sept. 20, 2012) (defendant sentenced to life on six counts of sex trafficking minor and adult women using physical restraint, and physical and sexual violence during a period of approximately five months), *aff'd,* 558 Fed. App'x 914 (11th Cir. 2014).

- *United States v. Sims*, Case No. 4:18-CR-455 (S.D. Tex. Dec. 2, 2019), (imposing a life sentence on a defendant convicted of trafficking and conspiring to traffic a 17-year-old girl, where the evidence showed the defendant was also pimping three adult women, during a period of less than one year), *aff'd*, 2021 WL 3732266 (5th Cir. Aug. 24, 2021).

- *United States v. Jennings*, Case No. 5:18-CR-318 (E.D.N.C. Aug. 18, 2020) (defendant sentenced to life for trafficking adult women, as well as minors aged 15 and 16, between 2013 and 2016 using physical violence and threats), *aff'd*, 2021 WL 2767840, at *3 (4th Cir. Jul 1, 2021) (noting that the defense's request that the Court give the defendant a chance to redeem himself were undercut by the defendant placing blame on his victims, and calling the defendant's abuse and sale of vulnerable women and girls "abhorrent").

- *United States v. Muslim*, Case No. 3:13-CR-307 (W.D.N.C. May 3, 2016) (defendant was sentenced to three concurrent life sentences for trafficking women and girls during a four-year period using violence, such as beatings and burning with cigarettes, and avoiding prior prosecution by forcing victims to write false recantation letters), *aff'd*, 944 F.3d 154 (4th Cir. 2019).

- *United States v. Cosby*, Case No. 2:15-CR-31 (N.D. In. Apr. 23, 2018) (60-year- old buyer of commercial sex was sentenced to life for coercing vulnerable, drug addicted females, including a 15-year-old Defendant child, to engage in commercial sex acts during a one-week period; at sentencing, the Court stated, "I'm somebody who frequently will stray from the guidelines. But in the case, I think the guidelines get it right. I think it's an altogether appropriate sentence when I not just look at the guidelines, but I look at all the other factors. To me, they all strongly favor that ultimate penalty. So, when you look at the nature and circumstances of this offense, it's

really just horrendous."), *aff'd*, 924 F.3d 329 (7th Cir. 2019).

- *United States v. Thompson*, Case No. 15-CR-30146 (S.D. Ill. Oct. 12, 2016) (defendant was sentenced to life following his guilty plea for trafficking a 15-year-old by force, fraud, and coercion), *aff'd*, 864 F.3d 837, 840 (7th Cir. 2017) (noting that while a life sentence is harsh, "Thompson . . . used the girl not only as an instrument to make money but also for his own personal sexual gratification. The damage done to her is unspeakable, and perhaps permanent. Thompson has earned his life sentence.").

- *United States v. Jones*, Case No. 2:15-CR-174-1 (E.D. La. Aug. 25, 2016) (life sentence for trafficking two minors using force and threats of force), *aff'd*, 699 Fed. App'x 325 (5th Cir. 2017).

- *United States v. Womack, et al.*, No. 13-206-01 (E.D. Pa. Dec. 18, 2014) (defendant sentenced to life for sex trafficking of two adults and one minor by means of threats with firearms, physical force, and controlled substance manipulation), *aff'd*, 646 F. App'x 258, 261-62 (3rd Cir. 2016) (noting that while the District Court Judge admitted he ordinarily only viewed life as an appropriate sentence where there had been a death, he did not believe he had any justifiable reason to depart downward from the guidelines, and agreeing with the District Court that the defendant's crimes were "heinous" and "horrible").

- *United States v. Marquez*, Case No. 3:12-CR-1351 (W.D. Tex. Sept. 3, 2014) (defendant sentenced to life on sex trafficking of a minor and by force, fraud or coercion and related offenses, where the defendant ran a brothel and used sexual assaults and threats of withholding pay or deportation to control his victims), *aff'd*, 667 Fed. App'x 496, 498 (5th Cir. 2016).

- *United States v. Mack*, Case No. 1:13-CR-278 (N.D. Ohio June 14, 2014) (imposing four life sentences for sex trafficking of three adults and one minor, where the defendant got his victims addicted to controlled substances, then forced them to work off their drug debts by doing sex dates), *aff'd*, 808 F.3d 1074 (6th Cir. 2015).

- *United States v. Campbell*, Case No. 4:12-CR-40039 (D. S.D. May 30, 2013) (imposing three concurrent life sentences on two counts of sex trafficking of a child and one count of sex trafficking by force, fraud, or coercion for conduct that occurred during an eight-month period, where the defendant had a significant history of violence), *aff'd*, 6 F.4ᵗʰ 764 (8th Cir. 2014) (amended Jul 26, 2021).

- *United States v. Campbell*, Case No. 1:10-CR-26 (N.D. Ill. Nov. 26, 2012) (defendant sentenced to life for running a massage parlor with 20 victims using physical violence and withholding of immigration documents; at sentencing the Court stated, "This is the first time I've ever been confronted with a life sentence with someone who I believe deserves it. I just cannot get over the way that you took these girls and used them for your own purposes, whether it was sexual

gratification, power…. You considered these people your property. You did with them what you wanted to do with them. They were young, vulnerable woman. And there is really no redeeming factors that I can see that would call for anything below what the guidelines call for in this case. They're going to have, they have a life sentence, all of them. Every time they look in the mirror, they're gonna remember this, and it's going hurt. And in a way, their life sentence at your hands compels a life sentence for you."), *aff'd*, 770 F.3d 556 (7th Cir. 2014).

Although it can be difficult to compare complex cases such as these to one another, the Defendant's case bears virtually all of the qualitative and quantitative hallmarks of the types of sex trafficking cases courts have found to deserve life sentences. These include the number of the Defendant's victims, the length of the Defendant's conduct, the profitability of his scheme, his use of minors, and his use of manipulation, sexual abuse, and physical force.

**V.      Conclusion**

As laid out above, the United States requests (1) that, at the time of sentencing, the Court order the Defendant to pay the victims' restitution in the amount of $14,157,200; (2) sustain some of the Defendant's objections and overrule others; and (3) sentence the Defendant to life in prison.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By:    */s/ Jessica Kahn Obenauf*
JESSICA KAHN OBENAUF
Assistant United States Attorney
Florida Bar No. 0052716
99 N.E. 4th Street
Miami, Florida 33132-2111
Telephone: 305-961-9317
Facsimile: 305-536-4699
Email: Jessica.obenauf@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of

the Court, on September 23, 2022.

*/s/ Jessica Kahn Obenauf*
JESSICA KAHN OBENAUF
Assistant United States Attorney