UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-23696-CIV-SINGHAL
(19-20804-CR-SINGHAL-1)

WILLIAM D. FOSTER,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____

## ORDER

**THIS CAUSE** came before the Court upon William D. Foster's ("Movant") *pro se* Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255, attacking the constitutionality of his convictions and sentences entered following a guilty plea in Case No. 19-20804-CR-SINGHAL-1. (DE [1]).[1] In consideration of the Motion (DE [1]), the Court has received the Government's response (DE [10]) to this Court's order to show cause. After reviewing the pleadings, for the reasons stated in this order, the Motion is **DENIED** because Movant is not entitled to relief.

**I.    CLAIMS**

In his Motion to Vacate Sentence, Movant raises the following claims:

**Claim 1a**: Ineffective assistance of counsel for failing to file a notice of appeal as directed by Movant. (DE [1] at 4).

**Claim 1b**: Ineffective assistance of counsel for failing to argue that Movant

---

[1] Citations to the civil docket are designated (DE [___]). References to the underlying criminal case, *United States v. Foster*, No. 1:19-cr-20804-AHS-1, are notated as (CR DE [___]). The Court also takes judicial notice of the filings in the corresponding criminal case. *See* Fed. R. Evid. 201; *Nguyen v. United States*, 556 F.3d 1244, 1259 n. 7 (11th Cir. 2009) (quoting *United States v. Glover*, 179 F.3d 1300, 1302 n.5 (11th Cir. 1999)).

did not know he was committing any crimes. *Id*.

**Claim 1c**: Ineffective assistance of counsel in connection with the plea negotiations. *Id*

**Claim 2**: Ineffective assistance of counsel for failing to interview witnesses and build a successful defense. *Id*. at 5.

**Claim 3**: Ineffective assistance of counsel for withholding exculpatory evidence. *Id*. at 6–7.

**Claim 4**: The Superseding Indictment was defective as it failed to allege the names of the victims. *Id.* at 8.

## II. FACTUAL AND PROCEDURAL HISTORY

The following facts are taken from the Factual Proffer signed by Movant in connection with his guilty plea (CR DE [191]). From December 23, 2008 through September 6, 2019, Movant and his co-conspirators operated a commercial sex operation in Miami-Dade, Broward, and Palm Beach Counties. (CR DE [191] at 1). They recruited females, some of whom were minors, to live and work with Movant at exotic dance venues and to engage in commercial sex. Movant and his co-conspirators also falsely promised these women that the money they earned would be saved and invested in bank accounts, allowing them the opportunity for an early retirement. (CR DE [191] at 1–4). Instead, the Movant and his co-conspirators controlled the bank accounts and the women received little benefit from their earnings, outside of basic living expenses. (CR DE [191] at 4-5).[2]

The women Movant recruited would engage in commercial sex and turn over all their earnings to Movant at the end of each day. (CR DE [191] at 4–5). Between 2012

---

[2] Movant and his co-conspirators deposited the earnings of the victims in various bank accounts in a manner which concealed the nature, location, source, ownership, and control of the proceedings. *Id*. at 6–8.

and 2019, at any given time between five and fifteen females lived with and worked for Movant. *Id*. These women would work eight-hour shifts, six days a week, for every week of the year. *Id*. If any of the women attempted to leave or failed to comply with the Movant's orders, they were threatened with psychological and financial harm. (CR DE [191] at 5). Movant was sometimes physically violent as well. *Id*. If a victim escaped, she left with little to none of her earnings. *Id*.

On June 2, 2016, Movant traveled with Victim 6[3] from Miami to Las Vegas so that Victim 6 could engage in prostitution in Nevada. (CR DE [191] at 5). In August of 2019, Movant directed Victims 3 and 6 to travel from Florida to Michigan for the purpose of working at exotic dance venues and engaging in prostitution. *Id*. On September 4, 2019, Movant drove Victims 3 and 6 to the airport for a flight to Detroit for them to engage in prostitution. *Id*.

On June 29, 2021, a federal grand jury sitting in the Southern District of Florida returned a Superseding Indictment charging Movant with conspiring to commit sex trafficking from 2008 through 2019 in violation of 18 U.S.C. § 1591(a)(1), (b)(1)–(2) (Count 1); sex trafficking of a minor, Victim 4 from September through October of 2006 and Victim 1 from August 2007 through June 20, 2008, by force, fraud, and coercion in violation of 18 U.S.C. § 1591(a)(1), (b)(2) (Counts 2 and 3); with sex trafficking by force, fraud, and coercion of Victim 1 from December 23, 2008 through May of 2010 (Count 4), of Victim 2 from May of 2004 through August of 2011 (Count 5), of Victim 5 from August of 2005 through December of 2009 (Count 6), of Victim 6 from August of 2013 through November of 2019 (Count 2017), and of Victim 7 from January of 2015 through November of 2019

---

[3] The different Victims refer to the unidentified victims in the Factual Proffer.

(Count 8) in violation of 18 U.S.C. § 1591(a)(1), (b)(1)–(2); with sex trafficking by fraud and coercion of Victim 8 from March of 2016 through April of 2017 (Count 9) and of Victim 3 from August of 2019 through September 6, 2019 (Count 10) in violation of 18 U.S.C. § 1591(a)(1), (b)(1)–(2); with conspiracy to transport individuals for purposes of prostitution from August of 2004 through September of 2019 in violation of 18 U.S.C. §§ 371 and 2421 (Count 11); with two substantive counts of transporting individuals for purposes of prostitution, namely, Victim 6 on June 2, 2016 (Count 12) and Victim 3 on September 4, 2019 (Count 13), in violation of 18 U.S.C. § 2421; and with conspiracy to commit money laundering from June of 2008 through November of 2019 in violation of 18 U.S.C. § 1956(h) (Count 14).   (CR DE [139]).

On March 25, 2022, at a change of plea hearing Movant pleaded guilty to the Superseding Indictment without a written plea agreement.  (CR DE [271]).  Movant confirmed on the record, and under oath, his educational background, that he was not under the influence of drugs or alcohol, and that he was able to understand everything that he discussed with his attorney.  *Id*. at 18–20.  He further confirmed that he read and understood the Superseding Indictment, the Factual Proffer, and "any and all discovery [and] materials that would be used in the prosecution of this case."  *Id*. at 18.  Movant stated that when he failed to understand something, he asked his attorney who provided an explanation.  *Id*. at 19.  In addition, Movant's counsel reviewed with him the sentencing guidelines, charging documents, and elements of each of the charged offenses, as well as the rights that he was giving up by pleading guilty.  *Id*. at 32–33.

When asked if he was happy with his attorney's hard work for him, Movant stated, "Yes, I am. Very much, Your Honor."  *Id*. at 33. Movant further stated that all the

4

"questions" he wanted answered and "things" that he wanted done before pleading guilty were answered and completed to his satisfaction and that there was nothing "left out there, left hanging." *Id.*

Movant next confirmed that he understood the charges, the maximum penalties, and the rights he was waiving. *Id*. at 23–36. Movant stated that he was not made any promises regarding sentencing and understood that the Court would decide the ultimate sentence. *Id*. at 38–39. Movant explained that he signed the Factual Proffer and agreed that the government would be able to prove the facts beyond a reasonable doubt at trial. *Id*. at 43. Movant stated that he was pleading guilty because he was in fact guilty. *Id*. at 45.

The Court found that Movant entered his guilty plea freely and voluntarily with a knowing, intelligent waiver of Movant's rights. *Id*. at 46. The Court further found that the plea was predicated upon the excellent advice of competent counsel and based on sufficient facts as contained within the signed Factual Proffer. *Id*.

On September 26, 2022, Movant appeared for sentencing with defense counsel. (CR DE [253]). Movant confirmed under oath that he read and reviewed the Presentence Investigation Report with counsel and was comfortable with allowing counsel to make objections and arguments on his behalf. *Id*. at 8. The Court told Movant to make defense counsel and the Court aware if Movant felt that defense counsel needed to raise any specific argument. *Id*. at 9. Movant agreed to do so. *Id*. Based on defense counsel's arguments, the Court reduced the criminal history category from V to III. *Id*. at 16. Before the Court imposed the sentence, Movant confirmed that he did not need more time to consult with his attorney. *Id*. Multiple witnesses testified at the

sentencing hearing which was conducted live with a Zoom feed for witnesses on either side who could not travel to Court. Numerous victims testified—some via victim impact statements—using initials so they did not have to reveal their true names on the record. *Id*. at 24–79, 96–141. Movant read a lengthy letter into the record wherein he disputed aspects of the victims' testimony. *Id*. at 142–50.

After careful consideration of the arguments and evidence presented at sentencing, the Court sentenced Movant to 60 years in prison4 followed by 15 years of supervised release. *Id*. at 190. The Court advised Movant that he had fourteen days after the judgment was entered to file a notice of appeal. *Id*. at 193.

On October 10, 2022, Movant's defense counsel timely filed a notice of appeal on Movant's behalf. (CR DE [237]). On April 10, 2023, Movant, through counsel, filed a motion for voluntary dismissal of appeal, *see United States v. William Foster*, No. 22-13389-D (11th Cir. April 10, 2023), which the Eleventh Circuit granted (CR DE [262]). In Movant's motion for voluntary dismissal, defense counsel stated that he previously filed a Notice of Appeal on behalf of his client to preserve Movant's right to appeal. (DE [10] at 300–05). Movant's counsel further explained that during a lawyer-client consultation, Movant decided that there was nothing to gain from pursuing the appeal and it would be in Movant's best interest to move for a voluntary dismissal. *Id*. at 304.

Pursuant to the mailbox rule, Movant timely filed the instant Motion to Vacate, Set Aside, or Correct Sentence under § 2255 on September 19, 2023.[5] (DE [1] at 12).

---

4 This term of years was below the federal sentencing guidelines recommended sentence of Life in prison.
[5] Absent evidence to the contrary, Movant's *pro se* pleadings are deemed filed in accordance with the mailbox rule when executed and handed to prison officials for mailing. *See Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).

Respondent filed a response to the Court's order to show cause.  (DE [10]).  Movant did not file a reply thereto.

## III. LEGAL STANDARD

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on a final judgment pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

"Relief under . . . § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982) (collecting cases)); *Massaro v. United States*, 538 U.S. 500, 504 (2003).  If a court finds a claim under § 2255 valid, the court shall vacate and set aside the judgment, and discharge the prisoner, grant a new trial, or correct the sentence. 28 U.S.C. § 2255(a).  The burden of proof is on Movant, not the Government, to establish that vacatur of the conviction or sentence is required.  *Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017), *reh'g en banc denied*, 899 F.3d 1218 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 1168 (2019).

### a. Ineffective Assistance of Counsel

Movant alleges that counsel was ineffective.  The Sixth Amendment affords a

criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. To show ineffective assistance of counsel, a movant must prove that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the movant. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

Regarding the first prong of the *Strickland* test, the movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Since this evaluation is inherently difficult, the court must strongly presume that counsel's conduct follows the reasonable professional norms, and the movant must overcome this presumption. *Id.* "To overcome that presumption, 'a petitioner must establish that no competent counsel would have taken the action that his counsel did take.'" *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citation omitted). "[C]onstitutionally acceptable performance is not narrowly defined, but instead encompasses a 'wide range.'" *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995).

For the second prong of the *Strickland* test, "it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. To show prejudice, the movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Finally, if the movant fails to demonstrate one of the two *Strickland* prongs, the Court need not address the other. *See id.* at 697. In other words, "[i]f it is easier to dispose of an ineffective claim on the ground of lack of sufficient prejudice, which . . . will

8

often be so, that course should be followed."  *Id.*[6]

### b.   Guilty Plea Principles

Because a guilty plea waives certain constitutional rights, before it is accepted, a district court must ensure that the waiver is a voluntary and intelligent act, done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea.  *Hill v. Lockhart,* 474 U.S. 52, 56 (1985); *United States v. Ruiz,* 536 U.S. 622, 629 (2002).  To be a voluntary and intelligent act, (1) a plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea.  *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005).

After the plea has been entered, a criminal defendant may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only: (1) raise jurisdictional issues, *United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003); (2) attack the voluntary and knowing character of the guilty plea, *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992); or, (3) challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, *United States v. Fairchild,* 803 F.2d 1121, 1123 (11th Cir. 1986).  Thus, a voluntary and intelligent guilty plea must stand unless induced by misrepresentations made to the accused by the court, prosecutor, or his own counsel.  *Brady v. United States*, 397 U.S. 742, 748 (1970).

Courts apply a "strong presumption" that statements made by a defendant during

---

[6] It is also worth noting that given the foregoing principles and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters*, 46 F.3d at 1511 (citation omitted).

a change of plea colloquy are true. "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

## IV.    DISCUSSION

Under **Claim 1a**, Movant alleges ineffective assistance of counsel for failing to file a notice of appeal as directed by Movant after sentencing. (DE [1] at 4). Under *Strickland*, 466 U.S. 66, an attorney acts in a professionally unreasonable manner when the attorney fails to file an appeal on behalf of a client who specifically requests one. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Failure to file a requested notice of appeal is *per se* ineffective assistance of counsel, regardless of the merits of a potential appeal. *Id*. at 483–86. Even when a defendant does not specifically request counsel to file an appeal, an attorney has a constitutional duty to consult with his client about an appeal when: (1) a rational defendant would want to appeal, or (2) the convicted defendant reasonably demonstrated to counsel an interest in appealing. *Id*. at 480.

Here, Movant's claim is refuted by the record because defense counsel did in fact file a timely notice of appeal. *See* (CR DE [237]). Subsequently, defense counsel moved to voluntarily dismiss the appeal at Movant's direction. *See* (DE [10] at 300–05). Movant is not alleging that counsel was ineffective in moving to dismiss the appeal, and had he done so he may have a valid claim. Instead, he makes a claim that is expressly contradicted by the record: that counsel never filed a notice of appeal. Furthermore, Movant has failed to overcome his burden of establishing the need for an evidentiary hearing on this claim. *See Schriro v. Landrigan*, 550 U.S. 465, 473–75 (2007) (holding that if the record refutes the factual allegations in the petition or otherwise precludes

habeas relief, a district court is not required to hold an evidentiary hearing). Movant is not entitled to relief under Claim 1a.

Under **Claim 1b**, Movant alleges ineffective assistance of counsel for failing to argue that Movant did not know he was committing any crimes. (DE [1] at 4). Even assuming Movant was completely ignorant of the legal ramifications of overseeing a sex trafficking operation—an abhorrent claim to even put on a paper— ignorance of the law is not a valid defense. See *McFadden v. United States*, 576 U.S. 186, 192 (2015). It follows that his defense counsel was not ineffective in failing to raise this meritless argument. See *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (holding that counsel is not ineffective for failing to raise non-meritorious issues).

Under **Claim 1c**, Movant alleges ineffective assistance of counsel in connection with the plea negotiations by "misadvising that the video interview of the victims would not have had any bearing on his defense." (DE [1] at 4). To show prejudice under *Strickland* in the context of plea negotiations, "a defendant must show the outcome of the plea process would have been different with competent advice. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citations omitted). In *Hill,* when evaluating the petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the Court required the petitioner to show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Alternatively, a defendant could show that but for counsel's ineffectiveness, "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." See *Lafler*, 566 U.S. at 164. Here, Movant fails to make this

11

showing.

To start, Movant does not allege how counsel's "misadvising that the video interview . . . would not have had any bearing on his defense" would have impacted his case, let alone show that he would have rejected the plea deal and go to trial. Moreover, he fails to show how, but for counsel's "ineffectiveness, Movant would have received a better plea deal. Instead, Movant merely makes a vague reference to misadvice from counsel "during a plea negotiation." *See* (DE [1] at 4). As a result, Movant fails to sufficiently show that counsel's performance in connection with plea negotiations was deficient. *See Strickland*, 466 U.S. at. 687-88.

Under **Claim 2**, Movant alleges ineffective assistance of counsel for failing to interview witnesses and build a successful defense. (DE [1] at 5). Specifically, Movant alleges that counsel failed to interview "Credible Witnesses," "Witnesses in the video," and "Attorney's." *Id.* No other facts support Claim 2. Under **Claim 3**, Movant alleges ineffective assistance of counsel for withholding exculpatory evidence that may have exonerated him. *Id*. at 6. For this claim, Movant alleges that counsel withheld "Video of the interview of the victims," "Statement from the Victims and Attorney's," and "Discovery package." No other facts support Claim 3.

Under federal law whether to call a particular witness is a strategic decision. *See United States v. Costa*, 691 F.2d 1358 (11th Cir. 1982). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Strickland*, 466 U.S. at 690–91. Further, a defendant cannot maintain an ineffective assistance of counsel claim "simply by pointing to additional evidence that could have been presented." *Van Poyck v. Fla. Dep't of Corr.,* 290 F.3d 1318, 1324 (11th

12

Cir. 2002) (citing *Waters v. Thomas*, 46 F.3d 1503, 1518 (11th Cir. 1995)).  He must also explain how counsel was ineffective for not incorporating that additional evidence into his or her presentation. *See id.*

Here, while Movant has identified specific witnesses that counsel could have called, he has failed to explain how these uncalled witnesses would have offered favorable, much less exculpatory testimony.  *See* (DE [1] at 5).  He merely mentions, in conclusory fashion, that the witnesses exist and that they possess exculpatory evidence, but he does not describe the evidence or explain how it is exculpatory.  *See Wilson*, 962 F.2d at 998.  As a result, he is not entitled to relief under Claims 2 or 3.

All of Movant's ineffective assistance of counsel claims also fail in light of the change of plea proceedings.  As this Court has previously stated, "a defendant's sworn answers during a plea colloquy must mean something."  *Oreste v. United States*, 2016 WL 11704016, at *8 (S.D. Fla. Dec. 28, 2016), *report and recommendation adopted*, No. 16-20407-CIV, 2017 WL 11562743 (S.D. Fla. Feb. 15, 2017).  Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.  *Blackledge v. Allison*, 431 U.S. 63, 74–75 (1977); *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).  A defendant's sworn representations, as well as representation of defense counsel and the prosecutor, and any findings by the judge in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings."  *Blackledge*, 431 U.S. at 73–74; *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir.), *cert. denied*, 513 U.S. 864 (1994); *United States v. Niles*, 565 Fed. Appx. 828 (11th Cir. 2014).

The record shows that Movant was fully informed before entering his guilty plea, never raised any concerns despite the opportunity to do so, and further asserted that he was fully satisfied with his attorney. See (CR DE [28] at 7–8, 12–13). Furthermore, Movant answered all the Court's questions during the plea colloquy while he was under oath. Id. at 18. He cannot now claim that his answers were false. See *Blackledge*, 431 U.S. at 74–75; *Rogers*, 848 F.2d at 168.

Under **Claim 4**, Movant alleges that the Superseding Indictment was defective as it failed to allege the names of the victims. (DE [1] at 8). Movant's argument fails because the argument does not involve a jurisdictional defect and was, therefore, waived when he entered a guilty plea. See *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) ("A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.").

"An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Wright*, 825 Fed. Appx. 676, 678 (11th Cir. 2020) (quoting *United States v. Steele*, 178 F.3d 1230, 1233 (11th Cir. 1999)).

Contrary to Movant's argument, the Superseding indictment listed the elements of the charged offenses, the dates when the events took place, and the locations. See (CR DE [139]). The fact that the indictment protected the identity of the victims, some of whom were minors at the time the crimes took place, did not render the charging document insufficient. See *United States v. Powell*, 1 F. Supp. 2d 1419, 1424 (N.D. Ala.

1998) ("There is no requirement that the name of alleged victims must be disclosed in an indictment."). As a result, the argument under Claim 4 fails on the merits.

V. **CERTIFICATE OF APPEALABILITY**

A certificate of appealability shall issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make such a showing, an applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, Movant has not made a substantial showing of the denial of a constitutional right. Nor has Movant raised issues that reasonable jurists would find debatable. A certificate of appealability is not appropriate in this case.

VI. **CONCLUSION**

1. Movant has failed to set forth an entitlement to *habeas* relief.[7] This Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (DE [1]) is **DENIED**.
2. No certificate of appealability shall issue.
3. The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers at Ft. Lauderdale, Florida, this 20th day of

---

[7] No evidentiary hearing is warranted because "the files and records of the case conclusively show that the [Movant] is entitled to no relief." 28 U.S.C. § 2255(b); *see also Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (finding that a hearing is not warranted in a § 2255 case where claims are "patently frivolous," "based upon unsupported generalizations," and/or "affirmatively contradicted by the record") (citation and internal quotation marks omitted).

March 2024.

                                                        RAAG SINGHAL
                                                        UNITED STATES DISTRICT JUDGE

cc:    William D. Foster
        Reg. 25839-104
        Jesup Federal Correctional Institution
        Inmate Mail/Parcels
        2680 301 South
        Jesup, GA 31599
        PRO SE

        Jessica Kahn Obenauf
        US Attorney's Office
        99 NE 4th Street
        Miami, FL
        305-961-9317
        Email: jessica.obenauf@usdoj.gov